**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| TESHA GIPSON, | : | Case No. 1:26-mc-11 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| VERTEX AEROSPACE, LLC (V2X), | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant Vertex Aerospace, LLC's Motion to Compel the Deposition of Dr. Mya Sabai (Doc. 1). The United States, representing Dr. Mya Sabai, has filed a Response in Opposition (Doc. 5), to which Vertex filed a Reply in Support (Doc. 6). Thus, this matter is ripe for the Court's review. For the reasons set forth, the Court **GRANTS** Defendant's Motion to Compel (Doc. 1).

## FACTS

Defendant Vertex Aerospace, LLC ("Vertex") moves to compel Dr. Mya Sabai to offer testimony during a virtual deposition, without prohibition from the Department of Veterans Affairs ("VA"). The deposition is part of discovery in the current lawsuit brought by Tesha Gipson against Vertex in the U.S. District Court for the District of Maryland, of which the VA is not a party. (*See Gipson v. Vertex Aerospace, LLC*, 8:24-CV-01066-LKG.)

In the Maryland lawsuit, Plaintiff Tesha Gipson filed an action under Title VII of the Civil Rights Act of 1964. She alleges that Vertex unlawfully discriminated against her in retaliation for her prior lawsuit against her previous employer, DynCorp International LLC. (Am. Compl., Doc. 1-2, Ex. A, ¶ 37.)

Plaintiff asserts two claims against Vertex: (1) retaliation and (2) intentional infliction of emotional distress. (Am. Compl., Doc. 1-2, Ex. A, ¶¶ 15-39.) In relation to Count II, Plaintiff claims that her self-esteem as well as her self-image were negatively impacted because she had to take a markedly lower paying employment opportunity in comparison to the role she applied to at Vertex. (*Id.*) Plaintiff further alleges that due to these psychological harms, she has suffered emotional distress such as, anxiety, stress, humiliation, and other emotional and physical ailments. (*Id.*)

In order to support her allegations, Plaintiff informed Vertex that she would be relying on a hybrid fact/expert witness, Dr. Mya Sabai, to testify on her behalf. (Plaintiff's Expert Disclosures, Doc. 1-3, Pg. ID 43-44.) Dr. Sabai is a board-certified psychiatrist employed by the Washington DC Veterans Affairs Medical Center. (*Id.*) Furthermore, Dr. Sabai has been Plaintiff's psychiatric medical provider for nearly ten years. (Motion, Doc. 1, Pg. ID 11.) According to the forms submitted to this Court, Dr. Sabai is expected to provide expert testimony, under Federal Rules of Evidence 702 and 703, regarding topics that concern the progression of Plaintiff's intensification of symptoms that correlate to the timeline in which Vertex denied her pursuit of employment with their company. (Plaintiff's Expert Disclosures, Doc. 1-3, Pg. ID 44).

On February 22, 2026, Vertex properly served Dr. Sabai with a subpoena at her

home in Cincinnati, Ohio. (Motion, Doc. 1 at Pg. ID 3-4.) The subpoena requested her presence at a virtual deposition on March 25, 2026. (*Id.* at Pg. ID 4.). The VA was informed of Vertex's intent to depose Dr. Sabai through Vertex's March 11, 2026, virtual communication to the VA's Office of General Counsel. (Touhy Letter, Doc. 1-6, Pg. ID 61). Shortly thereafter, on March 18, 2026, the VA responded informing Vertex that it would not permit Dr. Sabai to engage in the deposition due to the stipulations found in 38 C.F.R § 14.808. To date, Dr. Sabai has not been deposed.

In its opposition, the VA indicated that it would be willing to provide a declaration from Dr. Sabai as a substitution for her deposition. (Response, Doc. 5, Pg. ID 103, n.1.) Within the proposed Declaration, Dr. Sabai stated that she provides care for around eight to nine patients a day, oversees graduate medical students, that she does not recall any details of Plaintiff's treatment other than what was listed in the medical records, and finally, that she does not have any expert testimony to provide on the topics listed in Plaintiff's Rule 26(a)(2) disclosures. (Proposed Declaration, Doc. 5-1, ¶¶4-8). Vertex has since rejected the VA's offer to substitute Dr. Sabai's deposition with a formal Declaration. (Reply, Doc. 6, Pg. ID 118.)

Vertex now moves to compel Dr. Mya Sabai's testimony in a virtual deposition, without prohibition from the Department of Veterans Affairs ("VA"). The Motion has been fully briefed. (*See* Docs. 5, 6.) Thus, the matter is ripe for the Court's review.

**LAW**

Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37 allows for a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Rule 37 specifically allows for a motion to compel when a party fails to answer interrogatories or to provide proper responses to requests for production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Qashqeesh v. Monster Beverage Corp.*, Case No. 2:20-cv-03776, 2021 WL 3634117, at *2 (S.D. Ohio August 7, 2021) (internal citation omitted). Relevant evidence is evidence that "(1) it has any tendency to make a fact more or less probable than it would be without the evidence" and "(2) the fact is of consequence in determining the action." Fed. R. Evid. 401. If the moving party satisfies this burden, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)). Furthermore, Federal Rule of Civil Procedure 45 guides the issuance of subpoenas, which can be used to compel a witness to attend a deposition. Fed. R. Civ. P. 45(a)(1). And, importantly, Rule 45 allows for a court to quash or modify a subpoena, on timely motion, when that subpoena: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

At the same time, federal agencies "may prescribe regulations for the government

of [the] department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301. Notably, this federal housekeeping statute, as it's known, "does not authorize withholding information from the public or limiting the availability of records to the public." *Id.* Nevertheless, the Supreme Court held in *Touhy* that federal departments, as part of their housekeeping regulations, can create procedures for responding to subpoenas, known as *Touhy* regulations. *See Touhy*, 340 U.S. at 468; *see also Frank v. U.S. Food and Drug Admin.*, 998 F. Supp.2d 596, 602 (E.D. Mich. 2014).

Courts across the country are split on the proper way to challenge an agency's invocation of its *Touhy* regulations in response to a subpoena. Some circuits require a party to file a separate action under the Administrative Procedure Act, which reviews the refusal under an arbitrary-and-capricious standard. *See, e.g., Beckett v. Serpas*, No. 12-910, 2013 WL 796067, at *3 (E.D. La. Mar. 4, 2013). In other circuits, courts evaluate the enforceability of subpoenas directed at federal agencies under Federal Rule of Civil Procedure 45, weighing whether the request creates an undue burden on the requested agency or its employee. *See id.* Defendant argues that its Motion to Compel is properly brought here and the Court should examine it under the Federal Rules of Civil Procedure. (Motion, Doc. 1, Pg. ID 6.) The United States argues that Defendant's motion procedurally fails, as it should have brought the request in an APA action. (Response, Doc. 5, Pg. ID 106.)

The Sixth Circuit has not yet decided whether such actions to compel discovery from a federal agency should be brought as separate APA actions, reviewed under the

arbitrary-and-capricious standard, or through a motion to compel, reviewed through the lens of the Federal Rules of Civil Procedure. Courts in this District, though, have generally applied the latter approach, examining undue burden of the request by considering factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Gischel v. University of Cincinnati*, 1:17-CV-475, 2018 WL 9945170, at *4 (S.D. Ohio June 26, 2018). Other courts within the Sixth Circuit have done the same. *See In re Packaged Ice Antitrust Lit.*, No. 08-MD-01952, 2011 WL 1790189, at *2 (E.D. Mich. May 10, 2011); *Gardner v. Mich. State Univ.*, No. 1:12-CV-1018, 2013 WL 5320282, at *3-4 (W.D. Mich. Sept. 20, 2013). Combined with the Sixth Circuit's instruction on analyzing the conflict of different agency regulations with discovery rules, *see In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995), the Court finds it proper here to analyze this instant action in light of Federal Rules of Civil Procedure 26 and 45. The following analysis will proceed as such.

## ANALYSIS

To reiterate, Vertex, as the movant, must meet its initial burden by establishing the relevance of the deposition testimony itself. *Prado*, 2017 WL 515377, at *1. If Vertex is successful, the burden will shift to the VA to show that the deposition will be unduly burdensome. *Id.* The Court will therefore begin by examining the relevancy of Dr. Sabai's testimony and then will address the four factors that guide the question of undue burden.

### I. Relevance of Requested Deposition

Relevant evidence is any evidence "(1) has any tendency to make a fact more or

less probable than without the evidence; and (2) the fact is of consequence in determining the action." Fed. R. Evid. 401. Vertex asserts that, without the deposition from Dr. Sabai, it would be unfairly prevented from adequately testing the foundation, scope, and credibility of Plaintiff's claims, further hindering Vertex's ability to develop its defense. (Motion, Doc. 1, Pg. ID 10.) In support of this argument,, Vertex points out that Plaintiff's claims are primarily based on the alleged emotional harm caused by its decision not to extend her an employment opportunity. (*Id.* at Pg. ID 11.) Accordingly, Vertex's ability to examine Dr. Sabai on the justifications that led to the conclusions in Plaintiff's medical records are pivotal to proving whether its actions caused Plaintiff's distress. (*Id.*) Indeed, the lengthy relationship that Plaintiff and Dr. Sabai have cultivated makes her testimony "particularly significant" to the allegations of emotional distress. (*Id.*). The VA does not address the relevancy of Dr. Sabai's testimony, seemingly conceding the issue. (*See generally*, Response, Doc. 5.) Nevertheless, the Court finds Vertex's argument compelling and agrees that the professional information of Dr. Sabai is relevant to the underlying litigation. Vertex has met its initial burden.

**II. Undue Burden**

As Vertex has established relevance, the Court must now consider whether the request imposes an undue burden on the VA by examining relevance, need of the moving party, breadth of the request, time period, particularity, and the burden imposed.

**a. Relevance**

Vertex maintains that the requested testimony is relevant to the case because Plaintiff has established that Dr. Sabai will act as a dual capacity witness. (Motion, Doc.

1, Pg. ID 10-12.) She is expected to testify to both the firsthand knowledge she possesses over the situation and will provide specialized insight based on her profession as a clinical psychiatrist. (*Id.*) Moreover, the testimony directly correlates to Count II of the Complaint, where Plaintiff alleges emotional distress damages, including anxiety, stress, and humiliation, that were purportedly caused by Vertex's conduct. (*Id.*; *see also* Am. Compl., Doc. 1-2, ¶¶ 34-39.) Additionally, since the anticipated testimony from Dr. Sabai relates to the progression of Plaintiff's emotional symptoms and the correlation to the alleged retaliatory conduct by Vertex, Dr. Sabai's testimony has a tendency to establish Plaintiff's damages. (*Id.*) Again, the VA does not address relevancy, and the Court finds that the testimony is indeed relevant to the case. This factors thus weighs in favor of Vertex.

**b. Need of the Party**

In analyzing the need of the party, Vertex points to the extensive relationship between Dr. Sabai and the Plaintiff, of which no other identified witness can replicate. (Motion , Doc. 1, Pg. ID 11.) Furthermore, Vertex argues that medical records alone are insufficient to replicate the testimony that Dr. Sabai can provide. (*Id.* at Pg. ID 12.) As Vertex argues, "[m]edical records, standing alone, do not disclose the full range of opinions Dr. Sabai has formed, the reasoning underlying those opinions, or how specific facts support particular conclusions." (*Id.* at Pg. ID 13.) And, "the medical records themselves underscore the need for Dr. Sabai's testimony," because they reference documents and other stressors not fully explained or contained in the records themselves. (*Id.*) At bottom, Vertex states that depositional discovery "is essential to permit Vertex to

understand, evaluate, and, if necessary, challenge the opinions" of Dr. Sabai; this is particularly important where Plaintiff "relies on Dr. Sabai's testimony to support claims for substantial emotional distress damages." (*Id.* at Pg. ID 12.)

In response, the VA asserts that Dr. Sabai has no recollection of Plaintiff's emotional state beyond what is already contained in the medical records. (Response, Doc. 5, Pg. ID 109.) However, Vertex points out that, as a hybrid witness, Dr. Sabai will not only provide testimony related to her treatment of Plaintiff, but also "is expected to offer opinion testimony based on that treatment." (Motion, Doc. 1, Pg. ID 12.) And, because of her hybrid status, she is not required to produce a written expert report, so a deposition is the only way Vertex can "test the substance, foundation, and scope of her testimony." (*Id.*) Finally, Vertex argues that Dr. Sabai's claim that she does not recall anything outside of the records "is also immaterial," because, as a hybrid witness, the testimony "about her background and practice for documenting patient sessions [is] even more pertinent." (Reply, Doc. 6, Pg. ID 118.).

The Court agrees with Vertex that, considering both Dr. Sabai's fact and expert testimony, that testimony would be most fairly provided through a deposition rather than a written declaration. Thus, the need element weighs in favor of Vertex.

**c. Breadth of the Request**

Vertex next argues that its subpoena is narrow in scope. (Motion, Doc. 1, Pg. ID 17; Subpoena, Doc. 1-4, Ex. C.) Vertex merely seeks a single, virtual deposition of one identified witness. (Subpoena, Doc. 1-4, Ex. C.) Furthermore, Vertex does not request extensive discovery material or more than one deposition from Dr. Sabai. (*See generally,*

*id.*) The VA does not contest this specific factor. (*See generally*, Response, Doc. 5.) And, the Court agrees that the request is narrow and targeted specifically towards key factual information to be used during litigation; accordingly, this factor weighs in favor of compelling Dr. Sabai's testimony. *See Johnson v. Gallia Cty. Comm'rs*, No. 2:20-CV-65, 2021 WL 716621, at *2 (S.D. Ohio Feb. 24, 2021) ("a trial court retains discretion to determine that a discovery request is too broad").

**d. Time Period**

Neither party directly addresses the temporal reach of the deposition request. (*See generally*, Docs. 1, 5, 6.) Similar to the scope, though, the Court finds that the requested deposition's temporal reach is similarly confined to a single identifiable witness and time period. (*See* Subpoena, Doc. 1-4, Ex. C, Pg. ID 52.) Vertex seeks testimony pertaining to only the portions of Plaintiff's treatment that would help establish the timeline of employment events at issue between Plaintiff and Vertex. (*Id.*) Vertex is not seeking testimony regarding the entire decade-long relationship that the parties had. (*Id.*) Rather, the primary period to be addressed relates to the time in which the alleged retaliatory conduct and resulting emotional turmoil occurred. (*Id.*) Since this request is confined to an identifiable and relatively short period of time, this factor also weighs in favor of Vertex and against a finding of undue burden.

**e. Particularity**

Neither party directly addresses the particularity factor either. (*See generally*, Docs. 1, 5, 6.) As required, though, Vertex's subpoena properly identified with particularity the material being requested. (*See* Subpoena, Doc. 1-4, Ex. C, Pg. ID 52.) The subpoena

discloses the identity of the witness and the subject matter, including a thorough and specific list of possible topics of her anticipated testimony. (*Id.*) Furthermore, since the request was specific and directed at a previously disclosed witness surrounding a firmly defined topic, the Court finds that Defendants subpoena is sufficiently particular as required by the Federal Rules of Civil Procedure. *Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12-CV-1063, 2015 WL 4346218, at *2 (S.D. Ohio July 15, 2015) (in determining whether a request is particular, district courts consider "whether the request places the party upon reasonable notice of what is called for and what is not"). This factor, too, weighs in favor of Vertex's Motion.

**f. Burden Imposed**

The bulk of the parties' arguments center on the final factor: the burden imposed by compelling Dr. Sabai's deposition. The VA argues that, since Dr. Sabai maintains an extensive clinical caseload, in addition to her supervisory duties for graduate medical students she oversees, a virtual deposition would be substantially burdensome to both the VA and Dr. Sabai. (Response, Doc. 5, Pg. ID 108.) Additionally, the VA articulates that any burden created for Dr. Sabai or itself within this litigation is inherently unnecessary because they have already disclosed a substantive amount of content that her deposition testimony would also show. (*Id.* at Pg. ID 109.) And, the VA maintains that since Dr. Sabai has claimed in writing that she lacks a recollection of Plaintiff's treatment beyond what is documented in her medical records, there is no need for a testimony on that subject during a deposition. (*Id.*)

The VA also makes an argument for the institutional burden this deposition would

impose—that is, "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." (Response, Doc. 5, Pg. ID 108 (quoting *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011)) (cleaned up).) Specifically, the VA states that it has limited resources, and taking away employees "for every patient they treated in unrelated civil actions" would prevent them from engaging in their normal, official duties. (*Id.*) Additionally, the VA points to 38 Code of Federal Regulations § 14.808, which states that VA personnel shall not provide any "opinion or expert testimony in any legal proceedings concerning official VA information, subjects, or activities, except on behalf of the United States or a party represented by the United States Department of Justice." (*Id.* at Pg. ID 109.)

Vertex responds by first claiming the written Declaration is not an adequate substitute for the potential for additional information that deposition testimony may provide. (Reply, Doc. 6, Pg. ID 119.) Vertex further emphasizes that Dr. Sabai is one of the most crucial witnesses within this case, and since she is serving as a hybrid witness, Vertex believes that it should be permitted to probe as to the substance of her opinions, credibility as a medical specialist, the methodology in which she may use, and the full extent of her recollection in regards to Plaintiff's emotional state. (*Id.*) Moreover, Vertex asserts that the previously implemented burden-mitigating measure within the subpoena, specifically the virtual format of the deposition and narrow scope of subject matter, would drastically reduce any incremental burden the deposition may add to Dr. Sabai and the VA. Finally, to the extent that the VA claims a burden on Dr. Sabai's work

as a physician, Vertex argues that mere "scheduling conflicts [do not] constitute an 'undue burden.'" (*Id.* at Pg. ID 118 (collecting cases).) Put differently, "generalized claims of inconvenience or disruption, without a concrete, particularized showing of undue burden, are insufficient," to deny a deposition. (Motion, Doc. 1, Pg. ID 14 (citing *Bell ex rel. Est. of Bell v. Bd. of Educ. of Cnty. Of Fayette*, 225 F.R.D. 186, 196 (S.D.W. Va. 2004)).)

Addressing the issue of institutional burden, Vertex argues that, once again, the scheduling conflicts of the VA's physicians are not alone detrimental to the smooth operations of the VA. (Reply, Doc. 5, Pg. ID 118-19.) And, regarding § 14.808, Vertex states that the statute does not create a "categorical ban on such testimony, especially where such testimony does not implicate VA policy." (*Id.* at Pg. ID 116.) Indeed, Vertex notes that the statute specifically allows expert or opinion testimony "when an exceptional need is shown," as analyzed under the factors in § 14.808 and *Touhy*. (*Id.*) On this point, Vertex argues that construing the statute as a categorical ban "would lead to an untenable and unjust" result where any veteran receiving treatment from a VA physician "would effectively be barred from presenting treating-physician expert testimony." (Motion, Doc. 1, Pg. ID 16-17.) This, in turn, would "severely impair veterans' ability to pursue or defend claims." (*Id.* at Pg. ID 17.) Vertex directs the Court to two cases where the Court compelled the depositions of VA medical providers by recognizing that "the testimony concerned medical opinions formed during treatment." (*Id.*)

The Court acknowledges that this element is a significantly closer question than the prior *Gischel* factors, which thus far have all weighed against a finding of undue burden and supported Vertex's Motion to Compel. The VA has made a compelling

argument regarding the institutional burden that the requested deposition would impose, specifically as it relates to § 14.808. Courts across the nation have recognized that agencies can retain legitimate interest in managing the impact of subpoenas on their employees. See *Touhy*, 340 U.S at 468; *Frank*, 998 F. Supp. 2d at 602. However, a party still maintains a valid interest in testing a disclosed witness's testimony through deposition practices rather than a written declaration. *See OhioHealth Corp. v. U.S. Dept. of Veteran Affairs*, No. 2:14-CV-292, 2014 WL 4660092, at *6 (S.D. Ohio Sept. 17, 2014). And, Vertex is correct that § 14.808 does not provide a categorical ban of any testimony from a treating physician at the VA. Since Dr. Sabai has been identified as a witness whose testimony will drastically influence the discussion on Plaintiff's damages, the adequacy of the Declaration as a substitute for testimony is insufficient. Indeed, Vertex's "need for the requested information to not only adequately defend [itself] but to resolve important factual discrepancies," outweighs the minor burden on Dr. Sabai and the VA as a whole. *OhioHealth*, 2014 WL 4660092, at *6. To be sure, this testimony is certainly significant because a critical part of the case rests on whether Vertex's actions caused the emotional distress for which Dr. Sabai treated Plaintiff.

In weighing the need, relevance, scope, limited time period, and particularity of the request, along with the schedule accommodations Vertex has offered Dr. Sabai, the Court concludes that the burden imposed on Dr. Sabai and the VA does not outweigh the interest of Vertex in pursuing a testimony through deposition from Dr. Sabai.

## CONCLUSION

Thus, the Court finds that Vertex has satisfied its initial burden by displaying the relevancy of Dr. Sabai's deposition to the case at hand and the VA has failed to show undue burden placed on either Dr. Sabai or the institution.

For the foregoing reasons, the Court **ORDERS** the following:

1. Vertex's Motion to Compel (Doc. 1) is **GRANTED**;
2. The VA's denial of Dr. Sabai's testimony is **SET ASIDE**;
3. Vertex's subpoena of Dr. Sabai **SHALL BE ENFORCED**;
4. Dr. Sabai **SHALL APPEAR** for a virtual deposition at a time and place mutually agreed upon, which shall cover the topics listed in Vertex's subpoena; and
5. This matter is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: Matthew W. McFarland

JUDGE MATTHEW W. McFARLAND